UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HELLER URBAN RENEWAL, LLC and THE HARRISON REDEVELOPMENT AGENCY, | Civil Action No. 13-431 (SRC) |
| Plaintiffs, | OPINION |
| v. |  |
| FER BOULEVARD REALTY COPR., et al., |  |
| Defendants. |  |

**CHESLER**, District Judge

  This matter comes before the Court upon two motions to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). One motion was filed by Defendants Sternco Dominion Real Estate Corp. and The Hartz Mountain Group (the "Hartz Defendants"). The other was filed by Defendants FER Boulevard Realty Corp. and Erez Shternlicht (the "FER Defendants"). Plaintiffs Heller Urban Renewal, LLC and The Harrison Redevelopment Agency (collectively, "Plaintiff" or "Heller") have opposed both motions. The Court held oral argument on December 16, 2013. It has considered the papers filed by the parties as well as the arguments presented on December 16. For the reasons set forth below, and for the reasons stated on the record of oral argument, the Court will dismiss the Amended Complaint in its entirety. As indicated by the following discussion, the dismissal of some claims will be accompanied by leave of Court to re-plead them in a Second Amended Complaint.

1

**I. BACKGROUND**

In brief, this is an environmental action concerning the remediation of property located at 700 Frank E. Rodgers Boulevard South in Harrison, New Jersey (hereinafter, the "Property"). According to the Amended Complaint, the Property is contaminated with polychlorinated biphenyls (PCBs), oil and other hazardous waste. The Property is currently owned by Plaintiff Harrison Redevelopment Agency, which acquired title through an order of condemnation entered by the New Jersey Superior Court on or about June 10, 2011. Plaintiff Heller is the current tenant, and, according to the Amended Complaint, responsible for remediation of the Property pursuant to a redevelopment agreement with the Harrison Redevelopment Agency. The Defendants named in this suit are prior owners of the Property. The immediate predecessor owner is FER, which attempted to operate a moving and document storage company on the Property. FER acquired the Property in 1999, when Defendant Shternlicht, FER's principal, contracted to buy the Property from the Hartz Defendants and, on the same day the contract for sale was executed, assigned the contract to FER. Prior to that sale, the Hartz Defendants owned the Property from 1970 to 1999. In or about 1993, the Hartz Defendants ceased their manufacturing and other industrial operations at the Property, and their obligations to clean up the Property pursuant to New Jersey's Industrial Site Recovery Act ("ISRA") commenced. As acknowledged in the Amended Complaint, the Hartz Defendants, under a directive by the New Jersey Department of Environmental Protection ("NJDEP") to remediate, filed a civil action in this Court in 1994 seeking contribution for the remediation costs from previous owners of the Property pursuant to the § 113 of the federal Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA").[1] The Amended Complaint alleges that the Hartz Defendants' ISRA remediation remains incomplete.

Heller alleges that, in the process of redeveloping the Property, it has undertaken the task of an extensive and costly cleanup of contaminants. It further alleges that according to its experts, these response costs will total approximately $25,000,000. Heller filed this action seeking to recover the necessary response costs from prior owners the Hartz Defendants and the FER Defendants pursuant to CERCLA. The Hartz Defendants filed a motion to dismiss the initial Complaint, which sought an order declaring them responsible to remediate under ISRA and ordering them to meet such obligations. The Court granted the motion, and in so doing further observed that the Complaint appeared to be scant on the factual allegations that might allow Heller to meet the pleading standard imposed by Federal Rule of Civil Procedure 8(a). On the record of oral argument pertaining to the Hartz Defendants' first motion to dismiss, the Court granted Heller permission to file an Amended Complaint. The Amended Complaint, now challenged by all Defendants on this Rule 12(b)(6) motion, contains eleven counts, including several under CERCLA. It has also asserted claims for relief pursuant to two New Jersey statutes and various common law claims.

---

[1] Though the entire history of industrial operations on the Property is not set forth in the Amended Complaint, a 1998 opinion by Judge William Walls, who presided over Hartz's CERCLA § 113 action, provides a synopsis, which is helpful for context. See Hartz Mountain Corp. v. General Motors, No. 94-4817, 1998 U.S. Dist. LEXIS 23664 (D.N.J. Aug. 26, 1998). This Court takes note of the Opinion issued by Judge Walls as a matter of public record. It is also cited and quoted by Plaintiff in the Amended Complaint.

## II. DISCUSSION

### A. Legal Standards

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and then determine whether a reasonable inference may be drawn that the defendant is liable for the alleged misconduct." Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011). While the Court must accept all factual allegations as true, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678. In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic

4

documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).

### B. CERCLA Claims

The First through Fourth Counts of the Amended Complaint assert causes of action under CERCLA, described by the Third Circuit as a "broad and complex statute aimed at the dangers posed by hazardous waste sites." United States v. CDMG Realty Co., 96 F.3d 706, 712 (3d Cir. 1996). Heller's primary claim, for recovery of response costs incurred in remediating environmental contamination, arises under § 107 of the statute. See 42 U.S.C. § 9607. To assert a viable claim under CERCLA § 107, a plaintiff must plead facts establishing the following four elements:

> (1) that hazardous substances were disposed of at a "facility"; (2) that there has been a "release" or "threatened release" of hazardous substances from the facility into the environment; (3) that the release or threatened release has required or will require the expenditure of "response costs"; and (4) that the defendant falls within one of four categories of responsible parties.

CDMG Realty, 96 F.3d at 712 (citing 42 U.S.C. § 9607(a)). Section 107(a) lists the four classes of people liable for response costs: the facility's current owner or operator; any person who owned or operated the facility "at the time of disposal" of a hazardous substance; one who arranged for disposal or arranged for transport for disposal of a hazardous substance; and one who accepts hazardous substances for transport. 42 U.S.C. § 9607(a)(1)-(4).

Defendants focus their motions to dismiss on the fourth element of a CERCLA § 107 claim, arguing that the Amended Complaint fails to plead facts, which, if assumed to be true, would plausibly establish that they fall within one of the four categories of responsible parties.[2] The Amended Complaint indeed does not make clear which of the four categories Plaintiff asserts exposes Defendants to CERCLA liability. Rather, it generally claims that "defendants all fall within one of the four classes of parties subject to liability under CERCLA 42 U.S.C. § 9607(a) for the wrongful and improper discharge, release and/or disposal of PBCs and oil throughout the property." (Am. Compl. ¶ 38.) Plaintiff's written submissions in opposition to the motions, as well as its representations at oral argument, have clarified that it pursues the claim on the grounds that The Hartz Defendants and the FER Defendants disposed of PCBs, oil and/or other hazardous substances during the respective time periods that each owned the Property.

The seminal case in the Third Circuit on what constitutes an actionable "disposal" within the meaning of CERCLA is <u>United States v. CDMG Realty</u>. There, the Court of Appeals began its analysis by quoting from the statutory definition:

> The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

<u>CDMG Realty</u>, 96 F.3d at 713 (citing 42 U.S.C. § 9601(29) and quoting 42 U.S.C. § 6903(3)). The <u>CDMG</u> court expressly held that passive migration of contaminants does not constitute

---

[2] The Defendants have also argued that the response costs Heller seeks to recover are not necessary and therefore fail to support a viable CERCLA claim. The Court will not address this argument at this time. As the Court noted at oral argument, the positions the parties have taken with respect to the applicable standard to which the Property must be remediated concern factual questions which are premature at this stage of litigation. The Court expresses no opinion on the issue of what cleanup standard applies.

disposal. Id. at 713. By excluding passive migration from a disposal within the meaning of CERCLA, the Third Circuit concluded that under the statute, "past owners will generally only be liable as owners 'at the time of disposal' when they have committed or allowed *affirmative acts* of disposal on their property." Id. at 717 (emphasis added).

The acts which Heller alleges constitute an actionable disposal are listed in paragraphs 39 and 55 of the Amended Complaint. The problem with the allegations is that they do not set forth facts which, if taken to be true, plausibly state that an instance of hazardous waste disposal occurred during the ownership period of either the Hartz Defendants or the FER Defendants. Heller first cites to Judge Walls's 1998 Opinion in the CERCLA contribution action filed by Hartz against prior Property owner General Motors. It argues that, according to the Opinion, Hartz "moved and discharged" various hazardous substances, including soil contaminated with PCBs. The cited portion of the Opinion, however, does not state that Hartz discharged, dispersed or otherwise disposed of contaminants. Rather, in summarizing the environmental remediation performed by Hartz and underlying its CERCLA § 113 claim against General Motors, Judge Walls wrote: "Through June 1996, Hartz had *removed* eighty tons of PCB-contaminated sediments, debris, and/or oil/grease from the storm water catch basins, the combined sewers and the equipment tunnels." Hartz Mountain Corp. v. General Motors, 1998 U.S. Dist. LEXIS 23664 at *5. Neither the factual allegation made in the Amended Complaint, nor the 1998 opinion on which the allegation is based, assert that the Hartz Defendants committed an act constituting "disposal" in the course of remediating the Property, that is, that in removing the contamination,

they actively caused further spreading of hazardous waste.[3] The Amended Complaint also avers that the Hartz Defendants disposed of contaminants based on a letter written by the United States Environmental Protection Agency ("USEPA") to the Hartz Defendants' counsel on August 1, 2008 noting that the presence of PCBs in soil on a certain area of the Property was "indicative or a spill or leakage from the [underground storage] tanks and/or appurtenant piping . . . ." (Am. Compl. ¶ 39.C.) Assuming, for purposes of this motion, that mere leaking or spilling of contaminants, without affirmative human action involved in the spreading of waste, may constitute an actionable disposal,[4] the allegation is nevertheless deficient. Again, neither the factual allegation nor the letter on which it is based state that the leaking occurred at a time when the Hartz Defendants owned the Property. Indeed, the underlying USEPA letter notes that the Hartz Defendants took the position that any such leakage occurred before 1970 when they acquired the Property. Contrary to rejecting such a position, or affirmatively finding that the leakage did take place during the Hartz Defendants' ownership, the USEPA states that because Hartz has not proven when the PCBs were released into the soil, the USEPA cannot confirm that remediation of the Property need only comply with state standards and not the federal requirements applicable after April 18, 1978. It states: "While we do not refute your claim that

---

[3] In this regard, the Court notes that, in CDMG Realty, the Third Circuit contemplated that activity required or permitted by CERCLA might be actionable if it were performed in a negligent manner. CDMG Realty, 96 F.3d at 721. In that case, the court rejected the defendant's use of CERCLA's innocent owner defense to avoid liability for conducting a soil investigation negligently and thus causing further spreading of pollution, reasoning that "several CERCLA provisions suggest that persons otherwise insulated from CERCLA liability may nonetheless become liable if they act negligently." Id. Because CERCLA encourages prospective buyers to examine the soil, however, the CDMG court also held that in order to establish that the activity constituted a "disposal," a plaintiff must show that it was conducted negligently. Id. Thus, by analogy, the logic of CDMG's holding would appear to require some showing of negligence to bring the CERCLA-promoted activity of remediation within the purview of an actionable disposal of contaminants.

[4] In its discussion of the meaning of "disposal" under CERCLA, the Third Circuit did not reach a conclusion as to whether the acts of spilling or leaking require affirmative human conduct to constitute disposal or whether, without more, they amounted to the mere passive migration of contaminants. CDMG Realty, 96 F.3d at 714. However, it did reason that the statutory context of the term disposal coupled with CERCLA's separate reference to the distinct and broader term "release," would strongly suggest that a disposal in the form of leaking or spilling would require affirmative human conduct. Id. at 714-15.

the UST [underground storage tank] itself is sound or that discharges could have occurred during filling [of the UST prior to Hartz's ownership], you have not definitively shown that the piping associated with the UST was not a pathway for releases of PCBs subsequent to April 18, 1978. As such, EPA maintains that the Site be addressed under both the federal PCB regulations, and the state cleanup programs." (Tringali Cert., Ex. 2.) Finally, insofar as the Amended Complaint bases its CERCLA claims on allegations that the Hartz Defendants failed to disclose certain contamination to the NJDEP or the USEPA and/or failed to remediate any of the contamination on the Property, the Court finds that no plausible liability for recovery of response costs under § 107 has been stated. Such allegations set forth no facts whatsoever that the Hartz Defendants engaged in activity constituting a disposal, nor for that matter, a disposal occurring when they owned the Property.

The Court further observes that all of these factual allegations address activity or inactivity by the Hartz Defendants. For the same reasons discussed above, they are deficient to plead a *prima facie* CERCLA claim against the FER Defendants. The Amended Complaint pleads no facts that would plausibly state that a disposal of contaminants occurred at the time that the FER Defendants owned the Property. The Court rejects Heller's contention that CERCLA liability could be imposed upon the FER Defendants by virtue of the contractual relationship entered into by the Hartz Defendants and the FER Defendants when the Property was sold. No authority supports Heller's argument that liability under CERCLA (and other environmental statutes) can be predicated upon the FER Defendants' agreement to accept title to the Property contingent upon the Hartz Defendants' continuing obligations to remediate the Property pursuant to ISRA. CERCLA clearly delineates four categories of parties that may be

liable to pay response costs under § 107, and Heller must satisfy the statutory elements in order to state a sufficient claim.

While it is possible that Heller may be able to plead facts that would state a CERLCA § 107 claim under Rule 8(a), the Amended Complaint's allegations do not rise above purely conclusory language regarding the circumstances that would expose past owners of a contaminated Property to liability based on the disposal of hazardous substances.[5] As such, the CERCLA § 107 claim for recovery of response costs will be dismissed without prejudice and with leave to re-plead. See Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

Heller's claim for contribution under CERCLA § 113, however, will be dismissed without leave to re-plead at this time. As Heller acknowledged at oral argument, a necessary precondition of CERCLA § 113 claim is that the plaintiff has been or may be found liable for response costs in a § 107 action which has been filed against it or, alternatively, has resolved its liability to the federal or state government in settlement of a response action. See 42 U.S.C. §§ 9613(f)(1), 9613(f)(3); Cooper Indus., Inc. v. Aviall Svcs., Inc., 543 U.S. 157, 163 (2004) (identifying the circumstances under which a party has a cause of action under CERCLA for contribution, in contrast to circumstances giving rise to a claim for recovery of response costs under § 107). Heller does not presently meet either of alternative requirements for bringing a § 113 claim. However, because a § 113 claim for contribution may ripen for Heller in the future,

---

[5] The other categories of responsible parties do not apply. Heller conceded at oral argument that it is not pursuing its CERCLA claim on a theory that any of the Defendants arranged for the disposal of hazardous substances, and clearly none of the Defendants is a current owner of the Property.

if, for example, it should become the target of a § 107 claim for recovery of response costs as a current owner of the Property, the Court wishes to make clear that its dismissal of the claim is based solely on non-accrual of the contribution claim.  The dismissal of the § 113 claim as pled in the Amended Complaint will be without prejudice to Heller's right to assert the claim in this action, or in a future action, upon the occurrence of an event which would make the contribution claim available to Heller.

Finally, as to the Amended Complaint's two remaining CERCLA claims – for a declaration that Heller is not responsible for the cleanup of the Property and for indemnification – the Court will dismiss without granting leave to re-plead these claims.  Heller, in its submissions on this motion, has provided no indication that CERCLA provides for such remedies.  Should Heller wish to re-assert these claims, it must make a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15, supported by statutory authority for these causes of action.

### C. Spill Act Claims

Heller also seeks to impose liability on Defendants pursuant to the New Jersey Spill Act. Similar to CERCLA, the Spill Act provides a private cause of action for reimbursement of environmental remediation costs.  See N.J.S.A. 58:10-23.11g.  It provides that "any person who has *discharged* a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." See N.J.S.A. 58:10-23.11g(c) (emphasis added). The caselaw interpreting the word "discharged" within the meaning of the Spill Act holds that while the term is broad, it does not encompass the passive migration of a hazardous substance already

11

present in the soil or water. N.J. Dep't of Env'tl Protection v. Dimant, 212 N.J. 153, 161-62 (2012) (citing White Oak Funding, Inc. v. Winning, 341 N.J. Super. 294, 299 (App. Div.), certif. denied, 170 N.J. 209 (2001)). Moreover, for a party to be liable under the Spill Act, the discharge of hazardous waste at issue "must be tied to the discharge by that operator [of the property] and not another." Id. at 175; see also State Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 502 (App. Div. 1983) (holding that a party must own or control property at time of discharge to be responsible under Spill Act). Thus, for the same reasons discussed in the section above addressing the insufficiency of the CERCLA claim for recovery of response costs, the Spill Act claims against the Hartz Defendants and the FER Defendants must be dismissed for failure to allege facts that a discharge occurred on the Property during their respective ownership periods. The Court will, however, grant Heller leave to re-plead its claim for relief under the Spill Act.[6]

---

[6] To the extent the motions seek dismissal of the Spill Act claim and the other state law claims on the basis that they are untimely, the motions are denied. Defendants maintain that a six-year limitations period applies to the Spill Act claim, relying on the New Jersey Appellate Division's decision in Morristown Assocs. v. Grant Oil Co., 432 N.J. Super. 287, 299 (App. Div. 2013), certif. granted, (N.J. Nov. 13, 2013). They argue that that the common law claims are time barred by N.J.S.A. 2A:14-1, which requires claims for tortious injury to real property to be brought within six years of accrual. Plaintiffs argue their state law claims are subject to a longer ten-year limitations period set by N.J.S.A. 2A:14-1.2, which applies to various actions commenced by the State. They further argue that civil actions commenced by the State concerning remediation of a contaminated site are governed by an extended limitations period accruing only when the contaminated site is remediated. See N.J.S.A. 58:10B-17.1. The Court is dubious that Plaintiff Heller, a private entity in a contractual relationship with the municipal Harrison Redevelopment Agency, could avail itself of the longer limitations period applicable to the State as it is defined in either statute. In any event, the Court need not address, on this motion, the disputed question of what limitations period applies to either one of the Plaintiffs' claims under the Spill Act and New Jersey common law because a dismissal of any of the state law claims on limitations grounds is not appropriate at this time. It is not patent, from the factual allegations of the Amended Complaint, when the claims would have accrued. To dismiss a claim on the basis of a statute of limitations defense, the time bar must be evident on the face of the complaint. Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

### D. Environmental Rights Act Claim

Plaintiff's claim under the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-1, et seq., must be dismissed. The ERA provides, in relevant part, that:

> Any person may commence a civil action in a court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment. The action may be for injunctive or other equitable relief to compel compliance with a statute, regulation or ordinance, or to assess civil penalties for the violation as provided by law. The action may be commenced upon an allegation that a person is in violation, either continuously or intermittently, of a statute, regulation or ordinance, and that there is a likelihood that the violation will recur in the future.

N.J.S.A. 2A:35A-4a.

The cause of action created by the statute grants private parties the right to "enforce an environmental protection statute as an alternative to *inaction* by the government which retains primary prosecutorial responsibility." Superior Air Prod. v. N.L. Indus., 216 N.J. Super. 46, 58 (App. Div. 1987). The New Jersey Appellate Division has concluded that an ERA action may lie only if the government has failed to act to enforce environmental obligations or, alternatively, if the DEP's enforcement of such obligations proves insufficient. Id. at 61. In addressing the question of whether a private plaintiff could pursue an ERA claim where the DEP had already commenced action under the Spill Act, it held that "pursuit of the private ERA claim must await DEP action in order to assess the sufficiency of its efforts, actions and remedy. Hence DEP's action under the Spill Act is preemptive of private rights under ERA at least where the DEP acts prior to or upon filing of an ERA proceeding and where the DEP action subsequently proves sufficient to protect the environment." Id. Heller bases its ERA claim on the alleged failure by

13

the Hartz Defendants to complete their cleanup obligations under ISRA. It concedes that the Hartz Defendants' ISRA matter remains open and ongoing but argues that the length of time the ISRA matter, initiated in or about 1993, has been pending without satisfactory remediation by the Hartz Defendants is a presumptive failure by the DEP to enforce ISRA. Despite Heller's interpretation of the unresolved ISRA cleanup obligations, it provides no authority supporting its view that the DEP action has proven insufficient. Heller has pled no facts concerning government inaction or failed action. As discussed above, New Jersey law holds that these are essential prerequisites to the cause of action provided by the ERA.[7] The ERA claim against the Hartz Defendants will be dismissed without prejudice, in consideration of the possibility that facts may develop upon the conclusion of the DEP's ISRA action that provide Heller with the necessary predicate for the claim. The Court will not grant Heller leave to re-plead the ERA cause of action at this time.

The ERA claim against the FER Defendants suffers from an even more fundamental infirmity. Whereas the potential claim against the Hartz Defendants is unripe, the claim against the FER Defendants appears to stand no chance of accruing at any point in the future. The salient deficiency is the lack of any ISRA obligation upon the FER Defendants. Nothing in the

---

[7] The Court acknowledges that it bases its analysis regarding the ripeness of a New Jersey ERA claim on decisions issued by the state's appellate court. Typically, when this Court must decide a claim involving matters of state law, it must "apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issue" before the Court. Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir. 1996). The parties' briefing and the Court's own research, however, revealed no decision by the New Jersey Supreme Court addressing the prerequisites of an ERA claim. The Third Circuit has directed that "[i]n the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." Id. Indeed, the United States Supreme Court has held that "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940). The New Jersey Appellate Division's decision in Superior Air Products v. N.L. Industries provides a strong indication that the state's Supreme Court would hold that a private action for injunctive or equitable relief under the ERA may not be initiated unless the state DEP has failed to act or has inadequately enforced environmental cleanup obligations.

Amended Complaint asserts, or even suggests, that the FER Defendants bear such a statutory responsibility. Moreover, as observed earlier in this Opinion, the Court is not persuaded by Heller's unsupported argument that a statutory obligation can be extrapolated from a private contract of sale between the party that undertook an ISRA cleanup when it ceased industrial operations on the Property and a subsequent owner making no industrial use of the site. For these reasons, the ERA claim against the FER Defendants will also be dismissed, without leave to re-plead.

### E. Common Law Claims

In addition to the statutory causes of action, the Amended Complaint also pleads for relief under the common law theories of trespass, strict liability, negligence and willful and wanton misconduct. The Court will address each one briefly.

The trespass claim must be dismissed with prejudice because this theory of liability, which holds a party liable for the "unauthorized entry (usually of tangible matter) onto the property of another," is not viable in cases involving environmental contamination. See EPEC Polymers, Inc. v. NL Indus., Inc., No. 12-3842 (MAS), 2013 WL 2338711, at *12 (D.N.J. May 28, 2013); see also Woodcliff, Inc. v. Jersey Construction, Inc., 900 F. Supp. 2d 398, 402 (D.N.J. 2012) (holding that trespass claim was an inappropriate theory of liability in case involving delivery of contaminated soil).

In contrast, a claim for strict liability may lie in a case involving the alleged disposal of hazardous waste. See Preferred Real Estate Investments, Inc. v. Edgewood Properties, Inc., No. 06-4266 (AET), 2007 WL 81881, at * 4 (D.N.J. Jan. 9, 2007); see also Amland Properties Corp. v. Aluminum Co. of Am., 711 F. Supp. 784, 802 (D.N.J. 1989) (holding, in a case for recovery

of response costs under CERCLA, that strict liability is a cognizable cause of action as between successive landowners). The claim pled by Heller in this case, however, must be dismissed for failure to plead non-conclusory factual allegations that would plausibly show that either the Hartz Defendants or the FER Defendants engaged in behavior that constituted an "abnormally dangerous activity," which is an essential element of the claim. Preferred Real Estate Investments, 2007 WL 81881, at *4; see also Amland, 711 F. Supp. at 804-06 (denying motion for summary judgment as to strict liability claim, reasoning that the defendant's actions allegedly resulting in leaching of PCBs into soil could be considered an abnormally dangerous activity under New Jersey law). As set forth above, the Amended Complaint fails to allege facts demonstrating that any of the Defendants disposed of waste on the Property or otherwise committed an act that would expose them to strict liability for the contamination. Given the possibility of curing this deficiency, the Court will dismiss the strict liability claim without prejudice and with leave to re-plead.

The negligence claim is also based on conclusory language about the manner in which the Hartz Defendants remediated the Property and the manner in which both the Hartz Defendants and the FER Defendants maintained the USTs and pipes on the Property. A sufficient negligence claim requires Heller to plead facts that would establish that it was owed a duty by Defendants, that the duty was breached by some action or inaction, and that such breach caused Heller to sustain damages. See, e.g., Preferred Real Estate Investments, 2007 WL 81881, at *2 (applying elements of negligence claim in reviewing sufficiency of claim based on disposal of hazardous waste). The claim cannot proceed without meeting the Rule 8(a) requirement of

factual content, as articulated by the Supreme Court in Iqbal and Twombly. Heller will, however, be permitted to re-plead the claim.

For similar reasons, the Court will also dismiss the claim for willful and wanton misconduct, which is essentially directed at the same behavior as a negligence claim, with an added degree of culpability. To plead a sufficient claim for willful and wanton misconduct, Heller must allege facts demonstrating "that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from [its] conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970); see also Travelers Indem. Co. v. S.C.S. Realty Corp., 151 F. App'x 180, 181 (3d Cir. 2005) (quoting the New Jersey Supreme Court's definition of the cause of action for willful and wanton misconduct).

### III. CONCLUSION

The Court will grant both motions to dismiss the entire Amended Complaint pursuant to Rule 12(b)(6). All claims, except the trespass claim, will be dismissed without prejudice. The trespass claim will be dismissed with prejudice. Based on the foregoing analysis, the Court will grant Plaintiff leave to file a Second Amended Complaint to re-plead the following claims: CERCLA § 107 claim, the Spill Act claim for recovery of response costs, strict liability and negligence. An appropriate Order will be filed.

                                              s/Stanley R. Chesler
                                              STANLEY R. CHESLER
                                              United States District Judge

Dated: January 6, 2014