HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Plaintiff Heller Urban Renewal, LLC
One Gateway Center
Newark, New Jersey 07102-5386
(973) 621-9020

CASTANO QUIGLEY LLC
Attorneys for Plaintiff Harrison Redevelopment Agency
155 Passaic Avenue, Suite 340
Fairfield, New Jersey 07004
(973) 808-1234

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
-----------------------------x
HELLER URBAN RENEWAL, LLC     :   Case No.   2:13-cv-00431
and THE HARRISON                                 (SRC-CLW)
REDEVELOPMENT AGENCY,         :

                 Plaintiff, :
v.
                              :
FER BOULEVARD REALTY CORP.,
EREZ SHTERNLICHT, STERNCO     :           SECOND
DOMINION REAL ESTATE CORP.,         AMENDED COMPLAINT
THE HARTZ MOUNTAIN GROUP,     :
and THE HARTZ CONSUMER GROUP,
INC.,                         :

                 Defendants. :
-----------------------------x
```

Plaintiffs, Heller Urban Renewal, LLC ("Heller") and the Harrison Redevelopment Agency ("HRA") (collectively "Plaintiffs"), by and through their attorneys, Hellring Lindeman Goldstein & Siegal and Castano Quigley LLC respectively, for their Complaint allege as follows:

## NATURE OF ACTION

1.     The HRA owns the property known as 600-798 Frank E. Rodgers Boulevard South, Harrison, New Jersey, Block 133, 1.01 on the Town of Harrison's tax maps (totaling 9.727 acres) (the "Property").

2.     The Property was formerly known as 700 Frank E. Rodgers Boulevard South, Harrison, New Jersey, and consisted of Block 133, Block 134 (lots 1-38, 42, 43), Block 135 (lot 1C), Block 153 (all lots), Block 153 (all lots), Block 153A (lots 27, 28, 29), and Block 169A (all lots) on the Town of Harrison's tax maps (totaling 10.5184 acres), prior to its being subdivided to create a .776 acre parcel, which parcel was conveyed to the Port Authority of New York and New Jersey ("PATH") for the expansion of the PATH Station in the Town of Harrison.

3.     The Town of Harrison, acting pursuant to the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A, et seq., declared certain designated areas of the Town of Harrison, including the Property, in need of redevelopment.

4.     At all relevant times herein, the Property consisted of approximately 880,000 square feet of building floor space in a series of ten (10) buildings, numbered Building 0 through Building 9, with multiple floors, some of which with basements or partial basements.

5.   The Property is located within an area designated as a Brownfield Development Area by the New Jersey Department of Environmental Protection ("NJDEP").

6.   At all times relevant herein, the Property has been contaminated with Volatile Organics, Priority Pollutant Metals, Poly Aromatic Hydrocarbons, Total Petroleum Hydrocarbons and Polychlorinated Biphenyls ("PCBs") and oil, among other hazardous substances.  Defendants caused or contributed to some or all of that contamination, as more fully set forth below.

7.   This action arises out of the Defendants' disposal, release or threatened release at the Property of the foregoing hazardous substances since April 18, 1978.

8.   As a result of the pervasive contamination, disposal, release, threatened release, spilling and leaking of hazardous substances throughout the Property, and into soil and ground water, Plaintiffs have suffered damages to the Property, the Property has only a limited use without remediation, and the Property poses a health and safety risk to human beings.

9.   By this action, Plaintiffs seek to recover compensatory damages for the losses they sustained and will sustain, including the response costs they have incurred and will incur, to remediate the Property to conform with NJDEP and National Contingency Plan standards, which include the federal

government's standard for responding to both oil spills and hazardous substance disposals, releases and threatened releases.

10.   Plaintiffs necessarily incurred the response costs to remediate the disposals, releases, threatened releases, spills and leaks of the hazardous substances caused by Defendants or for which the Defendants are responsible in whole or in part as set forth below.

## JURISDICTION AND VENUE

11.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 in that this action arises under the Constitution, laws or treaties of the United States including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and under principles of supplemental jurisdiction, 28 U.S.C. § 1367.

## THE PARTIES

12.   Plaintiff HRA is a redevelopment agency having an address of 600 Essex Street, Harrison, Hudson County, New Jersey.  The HRA was created by the governing body of the Town of Harrison, New Jersey pursuant to N.J.S.A. 40A:12A-11 et seq. The HRA acquired ownership rights to the Property through an Order entered by the Honorable Maurice J. Gallipoli, A.J.S.C., Hudson County Superior Court on or about June 10, 2011.

13.   Plaintiff Heller is a limited liability company of the State of New Jersey, having an address of c/o Heller Industrial Parks Inc., 205 Mill Road, Edison, New Jersey 08837. Heller is the tenant and redeveloper of the Property on behalf of Plaintiff HRA.

14.   Plaintiff HRA designated Heller as the redeveloper of the Property and entered into a Redeveloper Agreement dated March 17, 2003, as amended ("Redeveloper Agreement").

15.   Plaintiff HRA, as landlord, and Plaintiff Heller, as tenant, entered into a certain Ground Lease Agreement dated March 6, 2012, as amended ("Ground Lease").   Pursuant to the Redeveloper Agreement and the Ground Lease, Heller is responsible for remediating, developing, constructing and improving the Property as a mixed use development (i.e., residential and retail) and for cleanup, excavation and remediation of hazardous substances found on the Property and in its soils.

16.   Such cleanup, demolition, excavation and remediation on the Property are being taken under the direction and guidance of the NJDEP and will conform to National Contingency Plan standards.

17.   In discharging its duties as redeveloper, Heller is an instrumentality of HRA and serves a public purpose.

18.   Defendant Erez Shternlicht ("Shternlicht") has an address of 450 West 15th Street, New York, New York 10011. Shternlicht purchased the Property on June 18, 1999 through a Contract for Sale of Real Property ("Contract for Sale") from Sternco Dominion Real Estate Group ("Sternco"), and recorded a Deed on September 15, 1999 ("Deed").

19.   Defendant FER Boulevard Realty Corp. ("FER") formerly owned the Property and has an address of 215 Coles Street, Jersey City, New Jersey 07310.   FER obtained title to the Property when Shternlicht assigned the Contract for Sale between Sternco and Shternlicht to FER on June 18, 1999.   Upon information and belief, Shternlicht maintained control over FER on September 15, 1999 when the Deed was recorded and at all relevant times thereafter.   Hereinafter, Shternlicht and FER will be referred to collectively as "Defendants FER".

20.   Defendant Sternco has an address of 400 Plaza Drive, Secaucus, New Jersey 07094.   It was the owner of the Property between in or around 1970 through in or around 1999.

21.   Upon information and belief, Sternco allowed its affiliates, The Hartz Mountain Group and/or The Hartz Consumer Group, LLC ("Hartz"), to operate the Property and conduct business there between in or around 1970 through in or around 1995.   Hereinafter, Sternco and Hartz will be referred to collectively as "Defendants Hartz".

22.   Defendants Hartz ceased commercial operations at the Property in or about 1995.

23.   Defendants Hartz had an obligation to remediate the Property under the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 et seq. ("ISRA"), upon their cessation or announcing cessation of industrial operations at the Property.  Hartz commenced ISRA Case No. 93126 in or about 1993.

24.   Through their acts and omissions, Defendants Hartz caused disposals, releases, threatened release, spills and leaks of hazardous substances at the Property.

25.   In the Contract for Sale with Defendant Shternlicht, Defendant Sternco acknowledged Defendants Hartz' obligation to remediate the Property pursuant to ISRA Case No. 93126.

26.   Defendants Hartz notified Defendants FER about and gave FER access to the ISRA Case No. 93126 file, but did not fully disclose all known PCB contamination at the Property in its ISRA file, or otherwise fully disclose such contamination to Defendants FER.

27.   Defendants FER performed no environmental due diligence before acquiring the Property.  They took possession of the Property from Defendant Sternco "as is" and without representations or warranties of any kind, express or implied

relating to, among other things, "the condition or safety of the Property" including "hazardous materials."

28.  Defendants FER are not "innocent purchasers" of the Property inasmuch as they were aware or should have been aware that the Property was contaminated, and that continuing disposals, releases, spilling and leaking of hazardous substances were occurring and were threatened when they took possession of the Property and thereafter.

29.  Defendants FER have not performed any cleanup or remediation of hazardous substances, and failed to prevent the continued disposals, releases, threatened releases, spilling and leaking of hazardous substances at the Property.  Through their acts and omissions, or those of Defendants Hartz while FER owned the Property, FER caused disposals, releases, threatened releases, spills and leaks of hazardous substances at the Property.

30.  Without limitation, pursuant to CERCLA §101(35)(D), 42 U.S.C. §9601(35)(D), Defendants Hartz and FER failed to take reasonable steps to stop any continuing disposals or releases and to prevent any threatened future disposals or releases of hazardous substances, known and unknown, during their ownership of the Property.

## CONDEMNATION PROCEEDING

31.  Plaintiff HRA commenced a condemnation proceeding in or around April 18, 2011 in the Superior Court of New Jersey, Hudson County, matter titled <u>Harrison Redevelopment Agency v. FER Boulevard Realty Corp., et al.</u>, HUD-L-1981-11.

32.  In its Verified Complaint, Plaintiff HRA sought a judgment establishing that HRA was duly vested with and was duly exercising its authority to acquire the Property which was being condemned.

33.  Plaintiff HRA also sought a judgment extinguishing all easements, covenants, restrictions, tenancies and other interests in the Property.

34.  Plaintiff HRA sought an order appointing commissioners to fix the compensation required to be paid, in accordance with state statute, with a reservation for environmental remediation costs.

35.  On April 18, 2011 the Superior Court entered an Order requiring Defendant FER to show cause before the Court on June 10, 2011 as to why final judgment should not be entered against it for the above requested relief.

36.  On June 10, 2011, the Superior Court entered a final Order in favor of Plaintiff HRA.  HRA became the owner of the Property on that date.

37.   Plaintiff HRA deposited $2,970,000 dollars with the Clerk of the Superior Court, which represents payment for the Declaratory Taking which was approved by the Court.

38.   In June 2013, the condemnation trial for the Property concluded in the Superior Court of New Jersey, titled Harrison Redevelopment Agency v. FER Realty Corp., et al., Docket No. HUD-L-1981-11 with a total award of $8 million.

39.   On or about October 22, 2013 Plaintiff HRA deposited an additional $5,337,147.52 with the Clerk of the Superior Court to cover the condemnation award and interest through October 25, 2013.  Plaintiffs will ask the Superior Court to hold all funds in escrow until this matter is resolved, for application to Defendants FER's obligations to Plaintiffs for response costs and compensatory damages in this action.

<u>RESPONSE COSTS</u>

40.   The above mentioned hazardous substances at the Property has required and will require extensive and costly testing of the soil and water to determine the extent of contamination, and extensive and costly cleanup, demolition, excavation and remediation of the contamination.  Furthermore, Plaintiffs will be required to continue to expend large sums of money to remedy the contamination.

41.   Plaintiffs' expenditures, past and future, are necessary response costs caused in whole or in part by

Defendants Hartz' and FER's disposals, releases and threatened releases of hazardous substances at the Property.

42.   Plaintiffs have hired environmental experts, real property valuation experts, and attorneys to investigate who previously owned the Property, the nature and extent of hazardous substances and if, when, where and by whom they have been disposed, released, spilled and/or leaked at the Property.

43.   Based on the extent of contamination at the Property, environmental experts determined that cleanup, demolition, excavation and remediation of the Property will cost approximately $25,000,000.00, of which Plaintiffs have already expended over $19,000,000.

44.   All cleanup activities to be undertaken by Plaintiffs have been or will be approved by the NJDEP.

## FIRST COUNT

### (CERCLA - Recovery of Response Costs)

45.   Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 41 of the Complaint and incorporate the same as if set forth herein at length.

46.   The Property constitutes a "facility" within the meaning of CERCLA, 42 U.S.C. § 9601, et seq.

47.   There have been disposals, releases or threatened releases of hazardous substances, e.g. PCBs and oil, throughout the Property subsequent to April 18, 1978 within the meaning of

CERCLA, 42 U.S.C. §9601, et seq., for which Defendants Hartz and FER are responsible parties.

48.   The disposals, releases or threatened releases of hazardous substances throughout the Property for which Defendants Hartz and FER are responsible have caused Plaintiffs to incur response costs that are necessary and consistent with the National Contingency Plan.

49.   Plaintiffs are not liable for the payment of such response costs in that the disposals, releases, or threatened releases of PCBs, oil and other hazardous substances at the Property, and the damages resulting therefrom, are the responsibility of and were caused in whole or in part by Defendants Hartz or FER.

50.   Defendants all fall within a class of parties subject to liability under CERCLA, 42 U.S.C. §9607(a) for the wrongful and improper disposal, release and/or threatened release of PCBs and oil throughout the Property, to wit, 42 U.S.C. §9607(a)(2), as Defendants Hartz and FER owned or operated the Property at the time of the disposals, releases, threatened releases, spills and leaks of said hazardous substances set forth below.

51.   Defendants Hartz have not fully met their ISRA obligations or completed their Remedial Action Work Plan ("RAWP") under Case No. 93126.  Defendants Hartz also have not

met their ISRA obligation to disclose fully PCB contamination and areas of environmental concern at the Property as more fully set forth in a letter from NJDEP to Defendants dated January 10, 2005, and thereafter to complete the required clean-up of PCBs. ISRA Case No. 93126 has not been closed.

52.   Defendants Hartz from at least April 18, 1978 had a duty to inspect and maintain but failed to inspect and maintain the Property, and its floors, walls, tunnels, tanks, piping, valves, connections, and other facilities containing PCBs or other hazardous substances to prevent their spilling, leaking and entering soils or ground water or endangering human health.

53.   Defendants FER after taking title and possession on September 15, 1999 had a duty to inspect and maintain but failed to inspect and maintain the Property, and its floors, walls, tunnels, tanks, piping, valves, connections and other facilities containing PCBs or other hazardous substances to prevent their spilling, leaking and entering soils or ground water or endangering human health.

54.   Defendants Hartz' environmental consultants McLaren-Hart Associates ("McLaren") investigated the Property in 1998-99 and issued a RAWP for the buildings.  Defendants Hartz' remediation consultants Metcalf & Eddy ("M&E") also issued

several environmental reports entitled Phase I through V (from 1990 to 2000) and a RAWP for the property in 2005.

55.   Plaintiffs' environmental consultants JM Sorge, Inc. ("Sorge") investigated the Property in 2004, and issued a Site Evaluation Report in 2004 (04 Sorge), a Remedial Investigation Report in 2008, a RAWP to NJDEP in 2011, and a Self-Implementing PCB Remediation Plan in 2012 to the USEPA. Sorge provided oversight for the demolition and removal of buildings, facilities and soils containing hazardous substances at the Property consistent with the Plan approved by NJDEP and the USEPA.

56.   Sorge found the Property to have piping which was leaking PCBs and oil, and was traversing the site, providing direct connections between tanks/vaults in Building 9 and other buildings and facilities.  04 Sorge ES.  Sorge also found that the Property had subsurface tunnels with cracks which were leaking PCBs and oil, and were traversing Building 9 and other buildings.  04 Sorge ES.

57.   Sorge in 2004 found the Property to have more areas of hazardous substance contamination and at higher concentrations than McLaren found in 1998/9.  They are attributable at least in part to ongoing disposals, releases, spills and leaks which took place or continued during Defendants

Hartz' and FER's ownership, operations and maintenance of the Property.

58.   Defendants FER and Hartz knew or should have known that the subsurface tunnels, underground storage tank/vaults, product transfer lines, piping, valves, connections, and concrete walls/building slabs were leaking PCBs and constituted pathways for the continued discharge, release, spilling, leaking and active migration of PCBs throughout the Property since April 18, 1978.   04 Sorge ES.

59.   In addition to owning or operating the Property at the time of such disposals, releases and threatened releases, Defendants Hartz took affirmative actions which disposed, released, threatened the release, spread, spilled and leaked hazardous substances onto the Property on numerous occasions after April 18, 1978 and during the time they owned or operated the Property.

60.   Defendants Hartz' said actions include, but are not limited to, the following:

A.

(1)   On March 30, 1999 and April 16, 1999, the United States Environmental Protection Agency ("USEPA") exchanged letters with Hartz, wherein the Hartz Defendants represented to the USEPA that they would remove all PCBs at concentrations of 50 ppm or greater from certain portions of

Building 9 on the Property by solvent washes of walls and
scarifying floors.

   (2) USEPA defines concrete as a porous
surface, meaning that PCBs penetrate and pass through it.  40
CFR 761.3.  The walls and floors of the buildings at the
Property are concrete and were saturated with PCBs.  10 Sorge 2.

   (3) Defendants Hartz' remediation did not
comply with their representations to the USEPA.

   (4) Defendants Hartz scarified some
concrete flooring in Building 9, which necessarily dispersed
some of the PCBs encountered.  Defendants Hartz' environmental
consultant McLaren confirmed that PCBs were present to depths
greater than 4 inches in Building 9, but proceeded with a plan
to scarify only the upper 2 inches, which plan could not succeed
in removing the PCBs but instead assured their spread.

   (5) McLaren's reports do not indicate any
methodology was used to control PCB dust generated while
scarifying concrete floors saturated with PCBs, such as by
tenting or use of negative air pressure curtains to control
dispersion.  By scarifying floors without such controls,
Defendants Hartz actively spread, disposed and released PCB
infused concrete dust throughout Building 9.

   (6) In 2004, Plaintiff's environmental
consultant Sorge tested in and under Building 9, its walls and

floors and found PCB contamination to be more widespread vertically and horizontally than identified by McLaren.   In several areas PCB concentrations in 2004 exceeded those measured by McLaren in 1978/9.

(7)   Defendants' aforesaid conduct was negligent and failed to conform to the appropriate standards of care.  Defendants thereby negligently and actively disposed, released and spread PCBs and other hazardous substances within the meaning of CERCLA after April 18, 1978.

B.

(1)   In 2007-2008, Defendants Hartz sought confirmation from the USEPA that discharges, releases and threatened releases of PCB contaminating soil and ground water underlying Building 9 of the Property did not need to be remediated, on the basis that all such discharges or releases took place prior to 1970.

(2)   To the contrary, the USEPA directed Defendants Hartz by letter dated August 1, 2008 (the "Letter") "that the presence of PCBs in soils beneath the [underground storage tank ("UST") in Building 9] are indicative of a spill or leakage from the tanks and/or appurtenant piping" and connections, which extended beyond Building 9 to Buildings 3 and 4, and to the alley between them ("alley").

(3)   While the USEPA chose not to dispute the Defendants Hartz' contention that the UST had maintained its integrity, the USEPA did not concur with Defendants Hartz' claim that the associated connections and piping were not leaking. The USEPA advised Hartz that the piping remained a pathway for releases of PCBs during Hartz' ownership, for which Hartz are responsible even if the UST and pipes had originally been filled by a prior owner.

(4)   The said letter required Defendants Hartz to address the UST, piping, connections and PCB contamination in said areas "under both the Federal PCB regulations, and the state cleanup programs."

(5)   The UST under Building 9 that the USEPA referenced in its letter is AOC 20 in ISRA Case No. 93126.  This tank was known to Defendants Hartz as it had been initially identified in Hartz' Phase I Report (August 1990), but Hartz did not bring it to NJDEP's attention until Hartz' Phase IV Report (December 1997).

(6)   Defendants did not comply with the USEPA's requirements.

(7)   In 2004 Plaintiffs' environmental consultants Sorge found that Building 9 also had pits, vaults, piping, valves, connections and other facilities heavily

contaminated with and leaking PCBs and oil in areas and concentrations exceeding those Hartz had measured in 1998/9.

(8)  In 2013, before Plaintiffs began their own remediation, Sorge found that Building 9 also had a subfloor ventilation system, a basement with other piping, valves and connections, and other facilities and areas heavily contaminated with and leaking PCBs that Defendants had not reported as spilling and leaking in 1998/9.

(9)  In 2004 Sorge found that Buildings 3, 4 and the alley also had PCBs in areas and concentrations exceeding those Hartz had measured in 1998/9.

(10) The said UST (AOC 20) piping, valves, connections and other facilities had been spilling and leaking PCBs, free product and water in Buildings 3, 4, 9, the alley and into the soils below since April 18, 1978, during the time Defendants Hartz and FER owned or operated the Property.  Such spills and leaks were not reported by McLaren in 1998/9.

(11) Defendants Hartz and FER had an obligation to inspect and maintain the said UST, other tanks, vaults, piping, valves, connections and other facilities, which were spilling and leaking PCBs, in order to prevent additional disposals, releases, threatened releases, spills and leaks of PCBs after April 18, 1978, but did not do so.

(12) Defendants' said obligation arose in part because Hartz and FER had an obligation to inspect and maintain the Property and its facilities, because Hartz knew that said UST had piping, valves and connections and other facilities that were leaking PCBs, because the USEPA had specifically focused Hartz' attention on these facilities through its 2008 letter, because Hartz and FER owned the Property at the time of such disposals, releases, threatened releases, spills and leaks, and otherwise.

(13) Defendants Hartz' and FER's aforesaid failure to inspect and maintain their facilities was negligent and did not conform to the appropriate standards of care. Defendants thereby negligently and actively disposed, released, spilled and leaked PCBs and other hazardous substances within the meaning of CERCLA after April 18, 1978.

C.

(1)   Defendants Hartz were obligated by their RAWP to clean, fill and seal the subsurface process room in Building 1 that was part of AOC 15 in ISRA Case No. 93126.

(2)   Hartz did not fill and seal the room properly, although their Phase V Report (March 2000) falsely reported to NJDEP that it had been sealed.

(3)   Plaintiffs' environmental consultant Sorge discovered in 2013 that as a result of Defendants Hartz'

failure to seal the room, Hartz had transformed the Building 1 subsurface process room into a chamber which facilitated the mixing of spilling and leaking PCBs and oils that Hartz had failed to prevent or remediate, with storm water, thereby creating greater quantities of hazardous substances, which Defendants improperly allowed to flow into and through the subsurface process room they had not sealed, into soil and ground water.

(4)  Defendants Hartz should have contained said hazardous substances within the room by sealing and maintaining it properly.

(5)  Defendants Hartz' aforesaid improper sealing of the subsurface process room as required was negligent and failed to conform to the appropriate standards of care. Hartz thereby negligently and actively disposed, released, spilled and leaked PCBs and other hazardous substances within the meaning of CERCLA after April 18, 1978.

D.  Defendants Hartz did not properly and fully report the location and levels of PCB contamination at the Property to the USEPA and NJDEP, which allowed Hartz to develop and implement an improper, deficient and negligent RAWP that permitted additional spreading, spilling and leaking of PCBs:

(1)  In 2004 Plaintiffs' environmental consultant Sorge found that the actual levels of PCBs at the

Property exceeded those Defendants Hartz had measured in 1998/9, even for those portions of the Property Hartz had purported to remediate.

(2)   In 2004 Sorge also found new areas of PCB contamination that Defendants Hartz did not report in 1998/9.

(3)   In 2013 when Plaintiffs began to remediate the Property, they found areas and concentrations of PCB and other contamination beyond those Sorge had found in 2004.

(4)   The aforesaid additional contamination at the Property occurred after April 18, 1978 and resulted from: Defendants' Hartz negligent remediation activity, which caused spreading, disposal and release of PCBs; from Hartz' negligent failure to inspect and maintain their facilities, which were spilling and leaking PCBs that had been contained; from Hartz' negligent failure to follow the directions of the USEPA and NJDEP, which would have contained and prevented much of such spilling and leaking; and from Hartz' other negligent disposals, releases, threatened releases, spreading, spills and leaks of hazardous substances within the meaning of CERCLA during Hartz' ownership, operation and/or maintenance of the Property.

61.   Defendants Hartz did not inspect and maintain the facilities at their Property, and caused and permitted the said

disposals, releases, threatened releases, spreading, spills and leaks of PCBs to occur and/or continue subsequent to April 18, 1978.

62.   Defendants Hartz' aforesaid failure to inspect and maintain their facilities was negligent and failed to conform to the appropriate standards of care.

63.   Defendants FER did not inspect and maintain the facilities at their Property, and caused and permitted the said disposals, releases, threatened releases, spreading, spills and leaks of PCBs to occur and/or to continue subsequent to recording of the Deed in 1999.

64.   Defendants FER's aforesaid failure to inspect and maintain their facilities was negligent and failed to conform to the appropriate standards of care.

65.   Because Defendants Hartz did not fully disclose to NJDEP, USEPA or Defendants FER all releases or threatened releases, spreading, spills and leaks of PCBs of which Hartz/Sternco had obtained actual knowledge, Hartz remain liable together with FER for any and all disposals, releases, spreading, spills and leaks of PCBs which occurred during the period of FER ownership, pursuant to CERCLA, 42 U.S.C. §9601(35)(c).

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants Hartz and FER:

A.   Allowing for the recovery of all CERCLA response costs against Defendants, jointly and severally;

B.   Entering a declaratory judgment that Plaintiffs are not responsible parties for the clean up of the Property;

C.   Ordering Defendants to indemnify Plaintiffs from all costs and damages;

D.   Ordering Defendants jointly and severally to Plaintiffs reimburse or contribute under Section 107 for all costs incurred for cleanup and removal of hazardous substances, and related activities at the Property;

E.   Allowing Plaintiffs to receive money from the deposit made to the Clerk of the Superior Court in connection with the Declaratory Taking, to reimburse Plaintiffs for necessary recovery costs incurred or to be incurred in their efforts to remediate the Property;

F.   Ordering Defendants Sternco/Hartz to meet their ISRA remediation obligations under ISRA Case No. 93126 and otherwise under the Industrial Site Remediation Act;

G.   Awarding attorneys fees and costs against Defendants; and

H.   Awarding such other relief against Defendants as may be necessary and proper.

## SECOND COUNT

### (Spill Act)

66.   Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 60 of the Complaint and incorporate the same as if set forth herein at length.

67.   The New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. (the "Spill Act") strictly prohibits the discharge, disposal, release or threatened release of hazardous substances (such as PCBs and oil) into the environment.

68.   Pursuant to the Spill Act, any person who has discharged, disposed, released or threatened the release of a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs.

69.   Defendants Hartz and FER are persons subject to the Spill Act who discharged, disposed, released or threatened the release of PCBs, oil and/or other hazardous substances throughout the Property, and/or failed to remediate same, and/or who are responsible for the pervasive contamination of PCBs, oil and other substances throughout the Property.

70.   Based upon the foregoing, Defendants Hartz and FER are strictly liable for all of the cleanup and removal costs

incurred and to be incurred in connection with the remediation of PCBs, oil and other hazardous substances at the Property.

WHEREFORE, Plaintiffs demand judgment against Defendants Hartz and FER:

A.    Declaring that the Defendants Hartz and FER are jointly and severally liable for all damages, costs and payments attributable to the hazardous disposal or release;

B.    Entering a declaratory judgment that Plaintiffs are not responsible parties for the clean up of the Property;

C.    Ordering Defendants Hartz and FER to indemnify Plaintiffs from all costs and damages;

D.    Ordering Defendants Hartz and FER jointly and severally to reimburse or contribute to Plaintiffs for all costs incurred for cleanup and removal of hazardous substances, and related activities at the Property;

E.    Allowing Plaintiffs to receive money from the deposit made to the Clerk of the Superior Court in connection with the Declaratory Taking, to reimburse Plaintiffs for necessary recovery costs incurred or to be incurred in their efforts to remediate the Property;

F.    Ordering Defendants Hartz to meet their ISRA remediation obligations set forth under ISRA Case No. 93126 and otherwise under the Industrial Site Remediation Act;

G.   Awarding compensatory damages against Defendants Hartz and FER, jointly and severally;

H.   Awarding attorneys fees and costs against Defendants Hartz and FER; and

I.   Awarding such other relief against Defendants Hartz and FER as may be necessary and proper.

## THIRD COUNT

### (Strict Liability - Property Damages)

71.   Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 65 of the Complaint and incorporate the same as if set forth herein at length.

72.   Defendants Hartz and FER owed a duty to future property owners not to discharge, dispose, release, spread, spill, leak or threaten the release of hazardous substances at the Property.

73.   PCBs constitute an abnormally hazardous material whose handling and disposal by Defendants give rise to strict liability under New Jersey law.

74.   Plaintiffs' substantial use of the Property is impaired by Defendants Hartz' and FER's conduct, and without a major excavation and remediation of hazardous substances at the Property, the Property will be limited in its use and remain hazardous to human health.

75.   Based upon the foregoing, Plaintiffs have been damaged and are entitled to recover against Defendants Hartz and FER in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants Hartz and FER:

A.   Awarding compensatory damages against Defendants Hartz and FER, jointly and severally;

B.   Ordering Defendants Hartz and FER jointly and severally to reimburse Plaintiffs for all costs incurred for cleanup and removal of hazardous substances, and related activities at the Property;

C.   Ordering Defendants Hartz to meet their ISRA remediation obligations set forth under ISRA Case No. 93126 and otherwise under the Industrial Site Remediation Act;

D.   Allowing Plaintiffs to retain, set off and/or recover money from the deposit made to the Clerk of the Superior Court in connection with the Declaratory Taking, to reimburse Plaintiffs for necessary recovery costs incurred or to be incurred in their efforts to remediate the Property;

E.   Awarding attorneys fees and costs of suit against Defendants Hartz and FER; and

F.   Awarding such other relief against Defendants Hartz and FER as the Court deems necessary and proper.

## FOURTH COUNT

### (Negligence)

76.   Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 70 of the Complaint and incorporate the same as if set forth herein at length.

77.   As prior owners and/or operators of the Property, Defendants Hartz and FER owed to Plaintiffs a duty to engage in activities at the Property in such a manner so as to ensure that their use of the Property did not result in the pervasive contamination of the Property with PCBs, and other hazardous substances, which pose a clear threat to the health and safety of human beings.

78.   Defendants Hartz and FER breached their duty to Plaintiffs in that they failed to ensure that the Property was free from discharges, disposals, releases, spills, leaks and threatened releases of hazardous and toxic substances such as PCBs and oil at the Property.

79.   Defendants Hartz and FER further breached their duty to Plaintiffs in that their negligent remediation of the Property caused disposals, releases, threatened releases, spills and leaks of hazardous substances such as PCBs and oils at the Property.

80.   As a result of Defendants Hartz' and FER's negligence, Plaintiffs have suffered substantial damages to the Property and are now required to remediate the Property.

81.   Based upon the foregoing, Plaintiffs are entitled to recover damages against Defendants Hartz and FER in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants Hartz and FER:

A.   Awarding compensatory damages against Defendants Hartz and FER, jointly and severally;

B.   Ordering Defendants Hartz to meet their ISRA remediation obligations set forth under ISRA Case number 93126 and otherwise under the Industrial Site Remediation Act;

C.   Ordering Defendants Hartz and FER jointly and severally to reimburse Plaintiffs for all costs incurred for cleanup and removal of hazardous substances, and related activities at the Property;

D.   Allowing Plaintiffs to retain, set off and/or recover money from the deposit made to the Clerk of the Superior Court in connection with the Declaratory Taking, to reimburse Plaintiffs for necessary recovery costs incurred or to be incurred in their efforts to remediate the Property;

E.   Awarding attorneys fees and costs of suit against Defendants Hartz and FER; and

F.    Awarding such other relief against

Defendants Hartz and FER as the Court deems necessary and

proper.

                        HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
                        Attorneys for Plaintiff
                        Heller Urban Renewal, LLC


                        By: /s/ Robert S. Raymar
                            ROBERT S. RAYMAR
                            A Member of the Firm

Dated: February 4, 2014



                        CASTANO QUIGLEY LLC
                        Attorneys for Plaintiff
                        Harrison Redevelopment Agency


                        By: /s/ Gregory Castano, Jr.
                            GREGORY CASTANO, JR.
                            A Member of the Firm

Dated: February 4, 2014